IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BENOIT TSHIWALA
               Petitioner,          *

    v.                    *    CIVIL ACTION NO. AW-09-2232

GREGG HERSHBERGER, et al.,    *
 Respondents.

## MEMORANDUM

Pending is Benoit Tshiwala's counseled Petition for Writ of Habeas Corpus (Paper No. 1), the State's response and exhibits (Paper No. 18), and Tshiwala's reply, as amended (Paper No. 24). The Court finds no need for an evidentiary hearing, *see* Rule 8(a), <u>Rules Governing Section 2254 Cases in the United States District Courts</u>; *see also* 28 U.S.C. § 2254(e)(2), and for reasons stated below, dismisses the Petition with prejudice and denies a certificate of appealability.

### Background

During October and November 1998, employees of one gas station and eight food establishments located in Montgomery County, Maryland were accosted at gunpoint by two masked men who were dubbed by local law enforcement as the "Mutt and Jeff" robbers. Tshiwala and co-defendant William Backus were arrested and charged in a twenty-five count indictment in connection with several of the robberies, including the robbery of a McDonald's restaurant (the "McDonald's robbery"), a Wendy's restaurant (the "Wendy's robbery"), and the Forest Glen Deli (the "Deli robbery").[1] The trials for each robbery were severed, and Tshiwala and his co-defendant were tried separately. Tshiwala was convicted in all three cases following

---

[1] Four of the counts relate to a robbery at a Burger King that is not at issue here.

jury trials.[2]  The three cases were consolidated for the purposes of sentencing, appeal, and state

post-conviction proceedings, and are at issue in this federal habeas corpus proceeding.  Relevant

facts concerning each robbery were summarized by the Court of Special Appeals of Maryland in

its unreported opinion resolving Tshiwala's direct appeal:

### The McDonald's Case

On November 9-10, 1998, during the late evening and early morning hours, the Rockville SAT was conducting surveillance at the Plaza del Mercado shopping center at the corner of Bel Pre Road and Layhill Road. Detective Regis Thomas Blahut, Jr., Officer Alfred Butts, Officer Leland Wiley, and four other officers were involved in the surveillance, which was focused primarily on the McDonald's restaurant. The parking lot was well lit, and the officers used binoculars during the course of the evening. Detective Blahut's car had tinted windows and was also affixed with black cloth so that he could see out but no one could see in.

At approximately 1:15 am, a dark Pontiac Grand Am pulled into the parking lot, circled around, and then left. Shortly thereafter, it reentered the parking lot and slowed down as it approached Detective Blahut's vehicle. The car had two occupants, described as black males and estimated to be between the ages of 25 and 30. The men looked into Detective Blahut's car. The Grand Am then parked by the Shell station in the lot, but only stayed there for about a minute before going to and stopping behind the McDonald's. During this time, the vehicle's lights were off.

After the vehicle parked behind the McDonald's, the two men were observed talking to each other, and the driver, identified at trial as appellant, was seen pointing towards the McDonald's. While still in the car, appellant put on a dark jacket. A few minutes later, the passenger, who was dressed in dark jeans, a gray t-shirt, a black sweatshirt, and white tennis shoes with black markings, got out of the car, urinated on a light post, and got back into the car. Shortly thereafter, the outside lights around the restaurant were turned off.

As soon as the outside lights were off, appellant jumped out of the car, shut the door and quickly walked up to the corner of the McDonald's holding what appeared to be white gloves. In the meantime, three McDonald's employees had walked toward the side door of the restaurant. As they approached the door, appellant, who was holding a gun and wearing a ski mask, rushed into the restaurant and pushed one of the employees back. The

2 The McDonald's robbery was tried on August 2-3, 1999, the Deli robbery was tried on December 1-2, 1999, and the Wendy's robbery was tried on February 22-24, 2000.  Paper No. 18, Exhibits 9-21.

passenger then went to the same door and tried to get into the McDonald's, but it was locked.

One of the employees, Joe Martin, ran out the other side door and went westbound on Bel Pre, leaving only two employees in the building. Appellant pointed the gun at the manager, Alain Assemian, who put his hands up in the air. Appellant then pushed Mr. Assemian and the other employee, Yamoassa Sisse, into the kitchen and ordered them to lie down. Both men did as they were told, and appellant pointed the gun at Mr. Assemian's head and asked whether he was wearing an alarm. Although Mr. Assemian did not say whether he responded to appellant's query, he had, in fact, previously activated the alarm he wore around his neck and thrown it away. Appellant never asked for money or for anything else.

Appellant then left Mr. Assemian and Mr. Sisse in the kitchen and went back to the front of the store to the door. Mr. Assemian stood up, yelled "let's go" to Mr. Sisse, and then ran out the rear door. The SAT officers who had a view of the rear of the restaurant saw Mr. Assemian come out of the McDonald's, looking very scared and running really fast in a zig zag pattern through the parking lot.

Shortly after Mr. Assemian ran out of the McDonald's, appellant exited the back door and raised his hand. Appellant was wearing gloves at this point, and he had a dark-colored object, presumed by Detective Blahut to be a gun, in his hand. Appellant raised his arm towards the manager and "kind of like lurched forward"in a manner that suggested he was anticipating something, like a recoil. Afterwards, appellant "looks at his hand. He kind of shakes his hand like this . . . and by that time, the passenger has exited behind him." Both men trotted back to their vehicle and proceeded out of the shopping center onto Bel Pre Road.

The officers followed, with some of them maintaining visual contact of the vehicle the entire time, until it became safe to attempt a "rolling takedown" on New Hampshire Avenue. Detective Blahut, who had taken a different route than appellant to New Hampshire Avenue, positioned himself in front of the car and slammed on the brakes, causing appellant to swerve into a different lane. Detective Blahut then turned his vehicle towards appellant's car in an attempt to push it into the curb. At this point, appellant swerved into the driveway of the Hillendale Fire Department. Detective Blahut pulled into the driveway, hit appellant's vehicle from behind, and pinned the car to the wall. At the same time, two other officers pulled up close to the doors of the car driven by appellant so that appellant and the passenger could not exit the vehicle. The two were arrested without further incident.

The Grand Am was later towed back to police headquarters. Corporal Eileen O'Hara, a corporal in the Robbery Unit of the Major Crimes Division,

applied for a warrant to search the car. Once the warrant was signed, the car was searched. The following items relevant to this case were uncovered from the vehicle: two ski masks, appellant's U.S. passport, a pair of white canvas gloves, a pair of binoculars, a loaded .38 caliber Smith & Wesson handgun, some clothing, and a few canvas bags.

**The Forest Glen Deli Case**

On October 9, 1998, the owner of the Forest Glen Deli, Moo Chun ("Moo"), and his son, Peter Yun Chun ("Peter"), were stocking shelves and getting the coffee machine ready for the next day's business. The store closed at 8:00 PM. Shortly before 7:30 PM, an African American man, who was about five feet eight inches tall and stocky, came in and purchased a single can of beer. About five minutes later, a tall African American man wearing a white ski mask, dark hooded sweatshirt, blue jeans, and black Nike high-top shoes came into the store carrying a gun and asked for money. Moo noticed that the first man was already standing by the register with a bag open.

Moo opened the cash register and gave all of the money to the men. As Moo was behind the counter, the gunman pointed the gun at Peter and instructed him to get down on all fours. After the men had the money, the gunman pointed the gun at Moo and told him to go over near Peter and get down on the floor. The gunman then searched both men's pockets. Peter described the gun as a shiny black revolver that had chambers as opposed to a clip. Peter stated that the gun looked similar to the gun recovered from the Grand Am after the McDonald's incident. The gunman took both Moo's and Peter's wallets, and he also took Peter's Jansport backpack.

The backpack contained textbooks, as well as U2, Hootie and the Blowfish, and Better Than Ezra compact discs.

The gunman then demanded more money, and Moo told him there was none. The shorter man ran out of the store; the gunman told Moo and Peter to move towards the corner. Moo heard a sound, either the door alarm sounding or some conversation. When he distinctly heard the door alarm, he ran towards the front of the store, where he saw Oran Sandel, a regular customer, outside. Moo then heard the sound of a car, but he did not get a good look at the car itself.

Mr. Sandel happened upon the store as the shorter man was running out of the store. As he was walking into the store, he noticed a tall man in a blue sweatshirt with the hood pulled over his head. The tall man nodded at Mr. Sandel as he walked by, but Mr. Sandel did not see a gun or a ski mask. Shortly afterward, he saw a car "gunning" out of the parking lot. He was unsure of the color of the car but stated that it was a dark, midsize General Motors car. Mr. Sandel identified appellant in a line up that took place on

November 23, 1998, but in court he could not identify appellant as being in the store on the night of the robbery.

After appellant was arrested on the night of the McDonald's robbery, the police searched his residence pursuant to a search warrant. The police recovered four compact discs: two Hootie and the Blowfish, one U2, and one Better Than Ezra. The police did not recover any textbooks or a Jansport backpack.

## The Wendy's Case

At approximately 1:45 AM on November 4, 1998, three Wendy's employees, Erdal Sarp, Arthere Dusebayezu, and Akintunde Phillips, were preparing to leave after closing the restaurant for the evening. It was Wendy's company policy for all employees to leave together, and Mr. Phillips was leading the way on this particular night. As he started to push the door open, two African American men pushed their way into the restaurant, using abusive language and racial slurs. Mr. Phillips was hit in the head and pushed onto the tables in the dining area. The witnesses said that one of the men was tall and thin, and the other was shorter and chubbier. Both were wearing black ski masks, dark jackets or coats, jeans, and dark gloves that they described as "not full gloves." All three witnesses testified that the gun was a black revolver.

Mr. Sarp recalled that the short man had a gun and that the tall man hit Mr. Phillips in the head with a rock. Mr. Phillips remembered the tall man having the gun and that he was hit in the head with the butt of the gun. Mr. Phillips was bleeding from the wound to his head.

At this point, Mr. Sarp tried to calm the two men down by telling them that he was the manager and would give them what they wanted. The short man took Mr. Sarp back to the office, where the safe was located. In the meantime, the tall man had Mr. Phillips and Mr. Dusebayezu lie on the floor where he then tied them up with duct tape. Mr. Dusebayezu explained that the men must have brought the duct tape with them because they did not keep that kind of tape in the restaurant.

It took Mr. Sarp a few tries to open the safe, but he eventually succeeded, and the short man took the money and put it into a black bag. The tall man then asked Mr. Sarp if they had a backup safe and whether there was any other money in the restaurant. Mr. Sarp then opened the two cash registers and gave the men the money in those registers.

The men then asked for Wendy's uniforms, but there were no extra uniforms on the premises. Mr. Sarp also told the men that, if they went out the back door, an alarm would go off. The two intruders prepared to leave at that point, but there were police officers in the parking lot, apparently having

coffee. Mr. Sarp estimated that the two men spent an additional ten or fifteen minutes waiting for the police to leave. During this time, they turned off the dining room lights and had Mr. Sarp lie down next to Mr. Dusebayezu and Mr. Phillips. The men then took some of the victims' personal articles, including Mr. Sarp's wallet and college ring, Mr. Dusebayezu's wallet, and Mr. Phillips' wedding ring and $22. The men also ripped a phone off of the wall.

As the two men left, they thanked the victims for their cooperation but told Mr. Sarp not to do anything stupid because they knew where he lived. Mr. Sarp then called the police and untied Mr. Phillips and Mr. Dusebayezu. Mr. Phillips was taken to the hospital by ambulance, treated, and then brought back to Wendy's to give a statement.

During the search of appellant's vehicle that took place after the McDonald's robbery, Corporal O'Hara located a diamond ring in the map pocket on the driver's side of the vehicle. At trial, Mr. Phillips identified it as his wedding ring. Corporal O'Hara also found duct tape inside a black canvas bag that had been recovered from the rear floor on the passenger side of the vehicle.

Paper No. 18, Exhibit 4 at 5-13.

In the McDonald's case, Tshiwala was found guilty of attempted armed robbery, use of a handgun in the commission of a felony or crime of violence, first-degree assault, and conspiracy to commit armed robbery. *Id*., Exhibit 13 at 251-53. In the Forest Glen Deli case, Tshiwala was found guilty of two counts of armed robbery and two counts of use of handgun in the commission of a felony. *Id*., Exhibit 17 at 109-11. In the Wendy's case, he was found guilty of three counts of armed robbery, one count of first-degree assault, and three counts of use of handgun in the commission of a felony or crime of violence. *Id*., Exhibit 20 at 93-96.

At a consolidated sentencing held on April 28, 2000, Tshiwala disputed some of the facts concerning the robberies, but conceded to his participation in these offenses, emphasizing that his intent was to obtain money, not to harm people.  *Id*., Exhibit 21.  Tshiwala was sentenced to serve a term of 70 years in prison. *Id*. at 22-27.

On direct appeal to the Court of Special Appeals, Tshiwala, through counsel, raised the following claims:

1.      Was the evidence adduced at trial sufficient to prove the crime of attempted robbery with a dangerous and deadly weapon in the McDonald's case?

2..     Did Tshiwala's conviction for first-degree assault merge into his conviction for attempted armed robbery in the McDonald's case, pursuant to *Thompson v. State* or under the Rule of Lenity?

3.      Did Tshiwala's conviction for first-degree assault merge into his conviction for armed robbery in the Wendy's case, pursuant to *Thompson v. State* or under the Rule of Lenity?

4.      Did the trial court err in admitting evidence of other crimes in the Wendy's trial?

5.      Was the seizure of a diamond ring from a door pocket located within Tshiwala's automobile justified under the "plain view" exception to the warrant requirement? and

6.      Did the search warrant application for Tsiwala's apartment contain false information pertaining to the place to be searched which intentionally misled the judge who issued the warrant?

Paper No. 18, Exhibit 1 at 1-2. On May 4, 2001, the Court of Special Appeals of Maryland affirmed Tshiwala's convictions. *Id*., Exhibit 4. Reconsideration of the fourth issue concerning other crimes evidence was later denied. *Id*., Exhibits 4-6.

Tshiwala filed a petition for a writ of certiorari in the Court of Appeals of Maryland, abandoning further review of his first and fourth claims but arguing that

1.      His conviction for first-degree assault should merge into his conviction for attempted armed robbery of the McDonald's restaurant pursuant to *Thompson v. State* or under the Rule of Lenity, where the court instructed the jury that there were two separate theories upon which he could be convicted of assault;

2.      His conviction for first-degree assault should merge into his conviction for armed robbery of the Wendy's restaurant pursuant to *Snowden v. State* or under the Rule of Lenity;

3.      The warrantless seizure of a diamond ring from a door pocket located in his automobile was not justified under the "plain view" exception to the warrant requirement, where the motions judge erroneously shifted the burden of proof to Tshiwala to justify suppression; and

4. The search warrant application for his apartment contained false information pertaining to the place to be searched and misled the judge who issued the warrant.

*Id.,* Exhibit 7. Further review was denied on December 7, 2001. *Id.,* Exhibit 22. Tshiwala's pro se petition for writ of certiorari alleging that the trial court improperly denied the motion to suppress evidence seized from his apartment was denied by the United States Supreme Court on May 13, 2002. *Id.,* Exhibits 23 and 24.

On March 12, 2003, Tshiwala initiated state post-conviction proceedings in the Circuit Court for Montgomery County in all three cases. *Id.,* Exhibit 9. The petition, as supplemented by counsel, raised the following claims:

1. Trial counsel was ineffective for
   a. failing to object to the introduction of other crimes evidence in the Wendy's case;
   b. failing to object to the use of interpreters in all three cases based on the absence of the required voir dire;
   c. failing to enter into evidence Oran Sandel's out-of-court statement in the Forest Glen Deli case;
   d. failing to object to evidence found in Tshiwala's vehicle based on a broken chain of custody;
   e. failing in the Wendy's case to recall Arthere Dusebayezu after belated discovery of Dusebayezu's statement to the police;
   f. failing to challenge properly the sufficiency of the warrant that resulted in the seizure of compact discs from Tshiwala's apartment; and
   g. failing to file an application for three-judge sentence review;

2. Appellate counsel was ineffective for
   a. failing to present an argument that the police violated the "knock and announce" rule; and
   b. failing to challenge the sufficiency of the evidence on Count 3 of the McDonald's robbery; and

3. Tshiwala was was denied due process of law in the Wendy's case by the State's failure to disclose a police statement made by Dusebayezu.

Paper No. 18, Exhibits 25-29. A hearing on the claims raised in Tshiwala's petition was held on January 25, 2006, at which Tshiwala and his lead defense counsel, Dorsey Jones, Esquire,

testified. *Id*., Exhibit 27. An initial decision, filed by the Circuit Court on August 22, 2006, authorized a sentence review before a three-judge panel but otherwise denied post-conviction relief.  *Id*., Exhibit 9. Tshiwala filed a motion to alter or amend that judgment which remained pending in the Circuit Court for some time. *Id*. After Tshiwala moved for a ruling on his motion to alter or amend judgment, the court held a brief hearing on August 7, 2008, and that day issued a revised memorandum denying post conviction relief. *Id.,* Exhibits 9, 28-29.

Tshiwala filed an application for leave to appeal the adverse ruling of the post-conviction court which, as supplemented, alleged that:

1. The state post-conviction court failed to address
   a. whether trial counsel was  ineffective for
      i.   failing to object to other crimes evidence in the Wendy's trial,
      ii.  failing to object to evidence found in his vehicle based on a broken chain of custody, and
      iii. failing to challenge properly the sufficiency of the warrant for the search of a backpack found at his apartment; and
   b. whether appellate counsel was ineffective for failing to present an argument that the police violated the "knock and announce" rule;

2. Trial counsel was ineffective for
   a. failing to object to the use of interpreters without first conducting the required voir dire,
   b. failing to enter into evidence Sandel's out-of-court statement in the Forest Glen Deli case,
   c. failing to recall Dusebayezu in the Wendy's case after discovery of his statement to the police, and
   d. the cumulative effect of these errors;

3. Appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on count 3 of the McDonald's robbery; and

4.  Tshiwala was denied due process of law in the Wendy's case by the State's failure to disclose a police statement made by Dusebayezu.

*Id*., Exhibit 30. Tshiwala's application for leave to appeal was denied summarily by the Court of Special Appeals in an unreported opinion filed on June 29, 2009, with the court's mandate issuing on July 29, 2009. *Id*.,  Exhibit 31.

On February 9, 2007, a sentence review hearing was held in the Circuit Court. *Id.*, Exhibit 9. The panel reduced Tshiwala's sentence to 39 years in prison. *Id.*; *see also* Paper No. 6 at 3.

On November 26, 2008, Tshiwala filed a motion to correct an illegal sentence, which was denied on December 17, 2008. *Id.* Tshiwala filed an appeal from that order in the Court of Special Appeals, but the Court of Appeals intervened and undertook review over the case. The record does not reveal the final appellate outcome.

In his counseled petition for federal habeas corpus relief, Tshiwala argues that:

1. The trial court erred in denying his motion to suppress evidence based on asserted Fourth Amendment violations;

2. The post-conviction court failed to adjudicate on the merits his claim that trial counsel was ineffective for failing to challenge the sufficiency of the warrant for the seizure of compact discs;

3. Trial counsel was ineffective for
   a. failing to object to the use of interpreters based on the absence of the required voir dire;
   b. failing to enter into evidence Sandel's out-of-court statement in the Forest Glen Deli case; and
   c. failing to call Dusebayezu in the Wendy's case after discovery of his statement to police;

4. He was denied due process in the Wendy's case by the State's failure to disclose a police statement made by Dusebayezu; and

5. His separate sentences for first-degree assault are unconstitutional.

Paper No. 6.

## Threshold Issues

### Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), petitioners for federal habeas corpus relief must exhaust each claim in state court. Exhaustion is achieved by seeking review of the claim in

the highest available state court. *See* 28 U.S.C. §§ 2254(b)-(c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal and with other claims by way of a post-conviction petition, followed by petitioning the Court of Special Appeals for leave to appeal. Tshiwala no longer has any available state direct review or collateral review remedies available for the claims raised here. His claims will be considered exhausted for this federal habeas corpus review.

### Timeliness

Respondents do not contend - and the record does not show - that Tshiwala's petition is time-barred.

### Procedural Default

### Ground 5 – Constitutionality of Sentences

Respondents argue that Tshiwala's fifth claim concerning his sentences is subject to procedural default. This Court concurs.

A claim that has not been presented to the highest available state court by failing to raise it in post-conviction proceedings or on direct appeal or by failing to note a timely appeal, has been procedurally defaulted. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). Claims which have never been presented or were not exhausted properly in the state courts will not be examined on the merits if review of the claims in state court would be barred by state procedural rules. *See Johnson v. Maryland*, 915 F.2d 892, 895 (4th Cir. 1990).

The bar is not absolute. In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Supreme Court held that consideration of a claim in a petition for habeas corpus may be barred by failure to comply with state procedural rules, unless the petitioner makes a showing (1) of cause for the failure and (2) resulting prejudice. *See also Murray*, 477 U.S. at 495; *Engle v. Isaac*, 456 U.S. 107, 129 (1982). If a petitioner cannot show cause and prejudice to excuse procedural default, the habeas court must still consider whether it should reach the merits of the petitioner's claims. In appropriate cases, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *House v. Bell*, 547 U.S. 518, 536 (2006), citing *Murray, supra*, at 495 (quoting *Engle*, *supra*, at 135). This miscarriage of justice standard is directly linked to innocence. *Schlup v. Delo*, 513 U.S. 298, 320 (1995). Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 315. The miscarriage of justice exception applies when a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 496. The trial record here, however, provides no basis for an actual innocence claim.

Tshiwala contends in his fifth claim that his first-degree assault conviction in the McDonald's case should have merged into his attempted robbery for sentencing purposes, and his first-degree assault conviction in the Wendy's case should have merged with the armed robbery conviction for sentencing purposes. Paper No. 6 at 34-41. Respondents argue that although Tshiwala presented these claims in the state courts, he premised them solely on state court grounds. Tshiwala counters that the claims are preserved because he challenged his sentences on direct appeal under the "required evidence test" set forth in the Supreme Court

decision *Blockburger v. United* States, 284 U.S 299, 304 (1932).[3]  Paper No. 24 at 24;  *see also Tshiwala v. State of Maryland,* No. 763 (September Term 2000) (filed May 4, 2001) (unreported), found at  Paper No. 18, Exhibit 4 at 31.

Tshiwala's appellate arguments were premised on state law (albeit law developed in light of *Blockburger*), and their consideration here is procedurally defaulted.  Alternatively, even assuming Tshiwala intended to craft his appellate claim of double jeopardy violations under the *Blockburger* test, the detailed reasoning of the state appellate court, which is supported legally and factually, precludes granting relief by way of federal habeas corpus review.[4]

The charge of assault in the indictment does not specifically indicate whether it relates to brandishing the handgun inside the McDonald's during the attempted armed robbery or to the attempted shooting that took place outside the establishment. As noted by the intermediate appellate court, the charging scheme does show, however, that the first-degree assault charge related solely to the manager, Mr. Assemian, and not to  Mr. Sisse, the other employee who was present during the attempted armed robbery.  Both men were placed in fear by the brandishing of the weapon during the incident, but only  Assemian was the target afterwards of Tshiwala's attempted shooting.  Thus, the indictment established that the assault was premised on the attempted battery of Mr. Assemian.  Paper No. 18, Exhibit 4 at 2-4, 14-25.

Furthermore, the jury was instructed by the trial court that there were "two ways" assault could have been committed in this case: "One is an intent to frighten, and two is an attempted battery." The trial court told the jury that "the State can go on either theory." Paper No. 18,

---

[3] Under *Blockburger,* the test to be applied to determine whether there are two offenses or only one  is whether each statutory provision requires proof of a fact which the other does not.

[4] The Court notes that there is no federal constitutional right to merger of convictions for the purpose of sentencing. *See Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993).  Thus, to the extent this ground for relief is not subject to procedural default, it nonetheless is barred from review because it is not cognizable.  Furthermore, the claim regarding merging convictions for sentencing purposes was exclusively concerned with state law and not cognizable on federal habeas review.

Exhibit 13 at 197, 201. The State's theory in closing argument followed: "With the first degree assault and the attempted battery theory, if the defendant tries to come in contact in any way with the victim, that is your attempted battery. And we would argue that when the defendant is outside and he tries to shoot Mr. Assemian, that is your first degree assault." *Id.*, Exhibit 13 at 217. At sentencing, the trial court stated "On Count 3, that is the assault, first degree, for shooting at the gun running away, even if you didn't pull the trigger, and I believe you did, but it is still an assault with a gun, in Count 3, I give you 5 years consecutive to Count 1." *Id.*, Exhibit 21 at 23. Given this scenario, the appellate court correctly concluded that the assault in the McDonald's case was not a lesser-included offense of the attempted armed robbery. The assault was charged as a separate incident involving Mr. Assemian only, the evidence established an assault upon Mr. Assemian separate and apart from that subsumed with the attempted armed robbery, and the State explicitly argued to the jury that conduct upon which the assault charge was based consisted of the attempt to shoot Mr. Assemian as he escaped.

Tshiwala also argues that merger was required for his first-degree assault conviction and his conviction for armed robbery in the Wendy's case. The evidence showed that as three employees were attempting to leave the restaurant for the night, Tshiwala and his accomplice pushed them back inside. One employee, Phillips, was struck with a gun by Tshiwala with sufficient force to induce bleeding and cause Phillips to roll across some tables onto the floor.[5] After the assault on Phillips, Sarp, the manager, was taken at gunpoint to open the safe. No one else was hit or otherwise injured during the robbery. Both the way the offenses were charged and the evidence itself undermines Tshiwala's merger claims. Phillips was first struck on the head, then later placed in fear when the gunman pointed a gun at him and took his wallet and wedding

---

[5] Phillips was taken to the hospital. His injury required six stitches near his eye.

ring. Paper No. 18, Exhibit 19 at 17-21, 27.  With respect to each of the three victims in the Wendy's robbery, Tshiwala was charged with armed robbery and use of a handgun.  Only in regard to victim Phillips did the State add a charge of first-degree assault.  Because the assault and armed robbery convictions were premised on entirely separate and distinct conduct, merger would have been inappropriate.

Tshiwala was not subjected to multiple punishments for the same offense.  Whether deemed procedurally defaulted, not cognizable, or examined on the merits under *Blockburger*, this ground provides Tshiwala no basis for relief.

Cognizability

Ground I – Fourth Amendment Violations

Tshiwala argues in his first ground that the trial court erred in denying his motion to suppress evidence seized from his apartment based on asserted Fourth Amendment violations. Respondents contend the claim is not cognizable in a federal habeas corpus proceeding.

Federal courts  may not grant "habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial" where "the State has provided an opportunity for full and fair litigation of a Fourth Amendment Claim." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Fourth Circuit Court of Appeals has set forth an analytical framework for considering Fourth Amendment claims in § 2254 petitions:

> [I]n its analysis of a petition for habeas corpus under 28 U.S.C. § 2254 , a district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell* ..., first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice.
> * * * * * * * * * * * * * * * * * *
> Second, we hold that when the district court has made the 'opportunity' inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell* ... unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or

15

claims was in some way impaired.

*See Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978); *see also Mueller v. Angelone*, 181 F.3d 557, 570 n. 8 (4th Cir. 1999); *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir.1982) ("*Stone v. Powell* marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner has the opportunity to litigate those claims in state court.").[6]

The record shows that Tshiwala was provided with the opportunity to fully litigate his Fourth Amendment claims. Tshiwala presented Fourth Amendment claims relating to his three separate cases on July 29, 1999 and August 2, 1999, immediately prior to trial in the McDonald's case, in a lengthy hearing in support of his motion to suppress evidence. Paper No. 18, Exhibits 11 and 12. A suppression hearing was also held on November 22, 1999, immediately prior to the Deli case. *Id.*, Exhibit 15. Tshiwala later challenged the trial court's rulings with respect to the seizure of the diamond ring from his car and the seizure of other items from his apartment, including compact discs taken from a victim of the Deli robbery, on direct appeal, *id.*, Exhibit 3 at 9-12, and presented those claims in his petition for writ of certiorari. *Id.*, Exhibit 7.

As noted in the record, after Tshiwala and his accomplice were arrested, Tshiwala's car was towed to the locked police garage where it was searched pursuant to a warrant some twenty hours later. The property list appended to the warrant did not contain several articles recovered from the car, including Tshiwala's passport, binoculars, a silver watch, a navy blue and white

---

[6] Tshiwala provides no legal basis or citation for his suggestion that the Antiterrorism and Effective Death Penalty Act of 1996 abrogated the holding of *Stone* is unpersuasive, given the Supreme Court's continued reliance on *Stone* after adoption of the Act. *See, e.g., Wallace v. Kato*, 549 U.S. 383, 395 n. 5 (2007); *see id.*, at 399-400 (Stevens, concurring). *See also Oken v. Nuth*, 64 F.Supp. 2d 488, 495 (D. Md. 1999) (no habeas argument where state court provided opportunity to litigate Fourth Amendment issues); *aff'd other grounds*, 220 F.3d 259 (4th Cir. 2000); *Moreno v. Dretke*, 450 F.3d 148, 167 (5th Cir. 2006), *cert. denied*, 549 U.S. 1120 (2007); *Cabrera v. Hinsley*, 324 F.3d 527, 530 (7th Cir. 2003); *Marshall v. Hendricks*, 307 F.3d 36, 81-82 (3d Cir. 2002); *Sanna v. Dipaolo*, 265 F.3d 1, 8, 9 (1st Cir. 2001).

striped jacket, sunglasses, keys, and a gold diamond ring.

On appeal, Tshiwala complained only about seizure of the ring which connected him to the Wendy's robbery. The appellate court analyzed the seizure of the ring under the plain view doctrine, which permits the police to make warrantless seizures where they have a prior justification for their intrusion, discover evidence that is in plain view, and immediately perceive that what they have is evidence. *See Horton v. California*, 496 U.S. 128, 136 (1990). At the suppression hearing, Detective O'Hara testified that she was involved in the obtaining of the search warrant for Tshiwala's automobile when it was seized after the McDonald's robbery. Among the items seized from the car was a diamond ring located in the side map pocket compartment on the driver's door. The detective testified that although the ring was not listed on the addendum property list to the search warrant, she had been told that a diamond ring "supposedly was taken" and that the ring, with an unusual pattern of diamonds, "was described" to her. The trial court found that O'Hara was aware of the ring's existence prior to the search and although she failed to list it on the addendum, she "immediately perceived" that it was more than likely evidence based on her recollection of the victims' statements and given the unusual pattern of diamonds. The appellate court found that the trial court did not clearly err in refusing to suppress the ring from evidence in the Wendy's case. Paper No. 18, Exhibit 4 at 48-52.

Tshiwala also argued that the warrant to search his apartment contained false information pertaining to the place to be searched that intentionally misled the issuing judge. This argument was rejected by the trial court amd on direct appeal. Detective O'Hara testified that upon Tshiwala's arrest, she ran his Motor Vehicle Administration (MVA) record, which listed his address as 6624 Poplar Avenue. Sergeant Ruscher found that 6624 Poplar Avenue had been subdivided into apartments, and told O'Hara that Tshiwala resided in apartment number five;

thus, 6624 Poplar Avenue, #5, was listed in the warrant application as the place to be searched. The warrant application stated that this address had been obtained from Tshiwala and from the MVA. Notes taken during an interview with Tshiwala, however, indicate his address as 6622 Poplar Avenue. At another time he also gave his address as 6624 Poplar Avenue. O'Hara conceded that nothing in her notes reflecting the conversations with Tshiwala nor in the information she received from the MVA made any mention of an apartment number, and Detective Anderson agreed that no particular apartment number had been supplied by Tshiwala. O'Hara explained that prior to applying for the search warrant, she did not know that 6624 Poplar Avenue was a multi-unit dwelling and that Ruscher informed her of Tshiwala's apartment number. Ruscher testified that he went to 6624 Poplar Avenue prior to O'Hara's preparation of the search warrant application in order to obtain a description of the place to be searched, and learned at that time that the premises contained several apartments. A neighbor, Ms. Wilson, identified a photograph of Tshiwala, pointed to an entryway underneath the front porch of 6624, and told Ruscher that door led to Tshiwala's apartment. Ruscher looked inside the entrance and saw two doors, one for storage amd one the door of an apartment marked "5." He conveyed this information to O'Hara. Wilson, called as a defense witness, testified that she had observed Tshiwala using an entrance on the ground level, inside of which are two doors.

The trial court found that two statements in the warrant application were untrue. First, Tshiwala himself never told police that he lived in apartment number five. Second, the MVA lists his address as 6624, with no apartment number, contrary to what the affidavit sets forth. However, the trial court concluded that there was "no showing that this is a reckless or knowing disregard for the truth." The Court of Special Appeals likewise held that the faulty background information did not suggest that the detective acted "with the intent to mislead the duty judge."

Paper No. 18, Exhibit 4 at 52-63, 64. Although the applicant "did not correctly state how she knew appellant lived in the identified apartment, she had good reason to believe that he did." Although she gave "an incorrect factual background in her warrant application, she did not do so with the intent to mislead the duty judge." *Id*. at 61. The intermediate appellate court further opined:

> From the point of view of the duty judge who signed the warrant, the warrant was technically sufficient. It provided a sufficient and accurate description of the residence to be searched and was accompanied by a detailed application affidavit setting forth particulars of the robberies in which appellant was a suspect as well as a detailed, although not exhaustive, list of property the police wished to search for.

*Id.* at 55. The appellate court correctly concluded that the fact that there were mistakes in the background information as to how Tshiwala's address was obtained did "not make the executing officers' reliance on the warrant invalid or otherwise affect the admissibility of the evidence found in the apartment." *Id*. at 64.

Under these facts, it is clear that Tshiwala had a full and fair opportunity to litigate his Fourth Amendment claims, and the claims are thus barred from federal habeas review under *Stone v. Powell*, 428 U.S. at 481-82.[7]

### Ground 2 - Post-Conviction Court Error

Tshiwala's second claim, that the post-conviction court did not adjudicate on the merits his claim that trial counsel was ineffective for failing to challenge the sufficiency of the warrant for the seizure of compact discs, also is barred from consideration here, as a challenge to the state collateral process is not a cognizable basis for habeas corpus relief. *See* Wright v.

---

[7] As the Fourth Amendment claims are not cognizable, the Court will not examine Respondents' contention that a portion of the claim concerning the trial court's allegedly improperly shifted the burden of proof with regard to the seizure of the diamond ring is procedurally defaulted.

*Angelone,* 151 F.3d 151, 159 (4th Cir. 1998); *Mackall v. Angelione*, 131 F.3d 442, 447-48 (4th Cir. 1997); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988). In any event, the record demonstrates that any challenge to the warrant is meritless.

### Standard of Review

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> 1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Renico V. Lett*, ___ U.S. ___, 130 S.Ct. 1855, 1862 (2010).[8] Section 2254(d) also requires federal courts to give great deference to a state court's factual findings. *See Lenz v. Washington,* 444 F. 3d 295, 299 (4th Cir. 2006). Section 2254(e)(1) of the habeas statute provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of

---

[8]     Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Using this analysis, the Court now examines Tshiwala's remaining claims.

Ground 3 - Ineffective Assistance of Trial Counsel

The right to effective assistance of counsel is protected by the Sixth Amendment. Constitutional ineffective assistance of counsel claims are governed by *Strickland v. Washington,* 466 U.S. 668 (1984).[9] To prevail on a claim of ineffective assistance of counsel, a petitioner must show his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *Strickland,* 466 U.S. at 687. To demonstrate actual prejudice, a petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. There exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Id.* at 688-89. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101(1955)). Furthermore, a determination need not be made concerning the attorney's

---

[9]The Court reaffirmed and applied these standards in an ineffective assistance of counsel context in *Bell v. Cone*, 535 U.S.685 (2002):

> For respondent to succeed, however, he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. [internal citation omitted]. Rather, he must show [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Id.* at 698-9.

performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Id.* at 697.  Using this standard, the Court reviews Tshiwala's ineffective assistance claims.

Foreign Language Interpreters

Tshiwala first argues that counsel failed to require voir dire qualification of foreign language interpreters in violation of Maryland rules.[10]  Rules 16-819(d)(1) and (2), which govern the selection and appointment of interpreters, require the use of certified interpreters, but provide an exception:

> (1) When the court determines that an interpreter is needed, the court shall make a diligent effort to obtain the services of a certified interpreter.  If a certified interpreter is not available, the court shall make a diligent effort to obtain the services of an interpreter eligible for certification.  The court may appoint a non-certified interpreter only if neither a certified interpreter nor an interpreter eligible for certification is available.  A person related by blood or marriage to a party or to the person who needs an interpreter may not act as an interpreter.

> (2) ….Before appointing an interpreter under this Rule, the court shall conduct an appropriate inquiry of the prospective interpreter on the record.

Federal habeas corpus relief is not available for errors involving state law and procedure. *See Estelle v. McGuire*, 502 U.S. 62, 67-75 (1991).  In any event, the post-conviction court examined the issue and found that Tshiwala failed to establish prejudice.  Tshiwala argues here that the interpreter who translated Desubayezu's testimony volunteered to the jury that the witness's use of the word "caught" in the statement that one of the suspects "caught" the store manager, Erdel Sarp, also could mean "hit," and the prosecutor capitalized on this alternative translation to bolster the State's theory of battery in the Wendy's trial.[11]  This argument is not

---

[10] A different interpreter was used in each of Tshiwala's three trials.  In the McDonald's trial, victim Yamoussa Sisse, a native of the Ivory Coast, testified with assistance from a French interpreter.  The court swore in the interpreter but did not conduct voir dire to determine whether he was the appropriate interpreter for the case.  A similar process was used to appoint a Korean interpreter for victim Moo Chin in the Forest Glen Deli trial and to appoint a French interpreter for victim Arthere Dusebeyezu, who emigrated from Rwanda.

[11] The interpreter's translation is found at Paper No. 18, Exhibit 18 at 189-190.

supported in the record, inasmuch as Tshiwala was convicted of first-degree assault based on his striking of victim Phillips, not victim Sarp. Paper No. 18, Exhibit 20 at 93-96.

Failure to Move Evidence Into the Record

Tshiwala next alleges that counsel failed to enter into evidence witness Oren Sandel's out-of-court statement in the Forest Glen Deli case. Sandel, a regular customer, entered the Deli the night of the robbery and saw a tall black man wearing a blue hooded sweatshirt leaving the store. Nearly two months later, Sandel identified Tshiwala in a line-up. At the time of the line-up, Tshiwala had a goatee and mustache. .

Sandel could not identify Tshiwala at trial. He testified on cross-examination that he had given a statement to the police and assisted them in preparing a composite sketch of the suspect soon after the robbery. Sandel did not mention facial hair in his statement or when working with police on the composite sketch. When asked on cross-examination to explain the discrepancy, Sandel said his composite sketch depicted a black male with facial hair. When confronted by counsel with the fact that the sketch showed a clean-shaven black male, Sandel conceded that his memory had failed him. Further cross-examination elicited Sandel's statement that he was not able to clearly see the black male because he was not wearing his glasses. The composite sketch was moved into evidence. During deliberation the jurors requested a copy of the written statement, but were not able to receive it, as counsel did not move it into evidence. Paper No. 18, Exhibit 16 at 100-108, 118-123 and Exhibit 17 at 105-106.

Tshiwala suggests the jury requested the statement because it doubted Sandel's identification, and reading the statement during deliberations would have altered the outcome of trial. At the post-conviction hearing, trial counsel testified that he considered the sketch sufficient to impeach Sandel's identification testimony, and thus did not also introduce Sandel's

statement to the police. He also implied the statement was not particularly helpful, as it contained no reference regarding the perpetrator's facial hair. Paper No. 18, Exhibit 27 at 49-50. The post-conviction court found the decision to be a tactical one that did not prejudice the outcome of trial. This determination is reasonable and supported by the record. Tshiwala has not overcome the presumption that counsel's decision to move the sketch and not the statement into evidence was sound trial strategy. *See Bell v. Cone*, 535 U.S. 695, 698-99 (2002) (explaining the interplay between *Strickland* and 28 U.S.C. § 2254(d)).

Failure to Recall a State's Witness

Tshiwala also posits that counsel rendered ineffective assistance in the Wendy's case when co-counsel Lydia Wade failed to move for the recall of State's witness Dusebayezu after discovering on cross-examination that Dusebayezu had given a statement to the police.[12] The record reveals that counsel immediately objected to Dusebayez's revelation and moved to strike Dusebayezu's entire testimony as the statement had not been made available for impeachment purposes, whereupon the prosecutor indicated he had no knowledge of such statement. Paper No. 18, Exhibit 18 at 195-199. The trial court conducted its own inquiry and concluded Dusebayezu had not given a written statement to the police. *Id*. at 199-202.

The next day, the prosecutor provided counsel the written statement Dusebayezu made to police immediately after the robbery, explaining that a detective had found a case file that had not been forwarded to the lead detective. Counsel again moved that Dusebayezu's testimony be stricken from the record. The motion was denied, but the trial court directed counsel to read the entire statement into the record. Paper No. 18, Exhibit 19 at 9-11. 239-240.

Tshiwala claims the outcome of trial would have been different had the discrepancies between the statement and the trial testimony been more fully presented to the jury through

---

[12] Paper No. 18, Exhibit 18 at 195-205.

vigorous cross-examination, rather than merely reading the statement into the record. Among the discrepancies noted was that Dusebeyezu testified that the perpetrators stole his wallet as well as personal items from another victim, but made no mention of any of this stolen property in his police statement. Dusebeyezu testified on direct examination that he witnessed his coworker, Phillips, being hit, then on cross-examination testified that he did not see the assault. No assault was referenced in the written statement. Finally, Tshiwala notes that at trial he could not recall who opened the back door, but in his statement indicated he opened the door. The statement conflicts with the testimony of the other two victims, who stated that Phillips opened the door and was hit immediately by the perpetrators as they tried to gain entry.

Ms. Wade, who cross-examined Dusebayezu, did not testify at the post-conviction hearing. Lead counsel Dorsey Jones, however, testified as if he had undertaken the actual cross-examination of the witness:[13]

> On cross. [Dusebayez] had been argumentative. When I would impeach him on something, he'd try to explain it away. So that's why I didn't want him called back because I had his written statement that I could just simply read into the record versus if he gets on the stand and testifies, then he can try to explain something away by saying I didn't put everything in my statement, or something to that effect. So in this situation I did make a determination just to introduce the statement because he left things out, that he – his testimony on direct had been different than his statement.

Paper No. 18, Exhibit 27 at 65-66. The post-conviction court accepted Jones's testimony and found the decision not to recall the witness to be an acceptable tactical response.

Tshiwala now claims the post-conviction court's ruling cannot stand, in light of the fact that co-counsel, not lead counsel, cross-examined Dusebayezu. Confusion as to which of

---

[13] While Jones did not cross-examine Dusebayezi, he did read Dusebayezu's police statement into the record. Paper No. 18, Exhibit 19 at 95-96. The complete statement reads as follows:

> "We were leaving the store for the night, and as I opened the door, the two guys rushed in. Once they were inside, the guy with the gun was pushing me with the gun back towards the kitchen. Once in the kitchen, I was put on the floor and then they taped my feet and hands. I stayed on the floor until after they left. The manager cut the tape off me later."

Tshiwala's attorneys conducted the cross-examination is regrettable, but such error does not compel the undersigned to discredit either the testimony of counsel or the findings of the post-conviction court. The discrepancies between Dusebayezu's bare-bones statement as written down by the police and his testimony at trial are not material and certainly do not detract from or undermine the testimony of the two other victims of the Wendy's robbery. Counsel clearly attempted to have Dusebayezu's testimony stricken, but settled for reading the testimony into the record, rather than arguing to recall the witness for further cross-examination. Even were this court to assume a deficiency in counsel's performance, the "discrepancies" between the statement and the testimony at trial, even if obtained during vigorous cross-examination, would not likely have changed the outcome of the case, given the ample evidence establishing his guilt.

Ground 4 - Due Process Violation

Tshiwala's fourth claim – that he was denied due process in the Wendy's case by the State's failure to disclose Dusebayez's police statement – is likewise unavailing. A prosecutor's failure to disclose evidence to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution," *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and encompasses exculpatory evidence that is "known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).

In revisiting *Brady* and *Kyles*, the Supreme Court elaborated further:

> In *Brady*, this Court held "that the suppression by the prosecution of
> evidence favorable to an accused upon request violates due process
> where the evidence is material either to guilt or to punishment,
> irrespective of the good faith or bad faith of the prosecution."
> 373 U.S. at 87....We have since held that the duty to disclose
> such evidence is applicable even though there has been no request
> by the accused, *United States v. Agurs*, 427 U.S. 97....(1976),
> and that the duty encompasses impeachment evidence as well as

> exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676....
> (1985). Such evidence is material "if there is a reasonable probability
> that, had the evidence been disclosed to the defense, the result of
> the proceeding would have been different. *Id*. at 682; *see also*
> *Kyles v. Whitley*, 514 U.S. 419, 433-434....(1995). Moreover, the
> rule encompasses evidence "known only to police investigators
> and not to the prosecutor." *Id*. at 438....In order to comply with *Brady*,
> therefore, "the individual prosecutor has a duty to learn of any
> favorable evidence known to the others acting on the government's
> behalf in this case, including the police." *Kyles*, 514 U.S. at 437....

*Strickler v. Greene*, 527 U.S. 263, 280-81 (1999).[14]    Thus, under *Brady* and its progeny,

petitioner can establish a constitutional violation if able to show that (1) evidence favorable to

the accused was (2) suppressed by the state and (3) the suppression prejudiced the defense at

trial. *See id.* at 281-82.

As noted above, the minor discrepancies between Dusebayez's bare-bones police

statement and his testimony at trial were neither exculpatory nor material and did not affect the

outcome of the Wendy's trial. The post-conviction court's determination of this issue must

stand.

### Certificate of Appealability

A habeas petitioner has no absolute entitlement to appeal a district court's denial of his

motion. *See* 28 U.S.C. § 2253(c) (1). "A [Certificate of Appealability, or "COA"] may issue ...

only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at

§2253(c) (2). The petitioner "must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S.

274, 282, (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, (2000)), or that "the issues

presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*,

---

[14]In *Strickler*, petitioner failed to satisfy the Court of the existence of a reasonable probability that the conviction or sentence would have been different had withheld materials been disclosed, and thus failed to establish "materiality" under *Brady*. *Id*. at 296.

537 U.S. 322, 335-36, (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).

The Court will not issue a certificate of appealability because Tshiwala has not made the requisite showing. Denial of a certificate of appealability in this Court does not prevent Tshiwala from seeking a certificate of appealability from the appellate court.

The Petition is denied and dismissed. A separate order follows.

_____/s/_____
Alexander Williams, Jr.
United States District Judge